Next in number 2011, 1507, DEY PHARMA v. SUNOVION PHARMA. Let's wait just a second, Mr. Pittman, until everybody gets ready to go here. All set? Very well. May it please the court, this appeal is about a generic company who filed late with the FDA. It is unhappy about the results of its delay. It is now a burden to the courts in SUNOVION with speculative litigation. For the sole purpose... That's not necessary. This is a serious case. Yes, Your Honor. You know, address the merits of it rather than just sort of try to dismiss it. Well, there are two reasons why jurisdiction is lacking in speed that I would like to discuss. First, DEY's alleged harm is not concrete or imminent. DEY seeks a declaratory judgment that would have no real-world effect. Second, to trigger a potential forfeiture event, DEY has to obtain a final judgment of either non-infringement or invalidity... Let's suppose here that the date at which breath could go to market were two years from now, or three years from now, okay? Would there be declaratory judgment jurisdiction then? If breath could go to market two to three years from now, but there were still patents that were being asserted by SUNOVION against DEY in litigation that would expire after that date, the request for declaratory judgment would still be speculative. Because again, the later expiring original patents would be blocking... You mean if the challenges are divided between two cases, that it can never be declaratory judgment in jurisdiction of one of the cases? Well, I submit that in order for there to be jurisdiction, the declaratory judgment must address a harm that is real and concrete and imminent. But it can't really be the case, can it, that you can argue that the harm is speculative in case number one if you don't already have relief in case number two, and it's speculative in case number two because you don't already have relief in case number one, right? I mean, aren't you allowed to proceed sequentially to knock out various barriers to the relief you ultimately seek even if there's more than one barrier and requires more than one lawsuit? But I think the point is that there is jurisdiction by virtue of the patents asserting these later expiring original patents, as I'll refer to them. And because there's jurisdiction in that particular case, the barrier, which is, again, the 180 days, which requires all the patents, be that in valid or non-fringe, that's currently being handled in this first litigation where there is jurisdiction. And until you get to the point where there's a final judgment on those patents, that declaratory judgment has no effect. Well, but if there... Let's suppose that Brent decides not to launch at the earliest possible launch date based, perhaps, on its agreement. Now the question of how long it takes to resolve the underlying contested litigation ceases to be particularly important, right? That will get resolved. And if it gets resolved in favor of Day, then Day's declaratory judgment, success on the declaratory judgment matters a lot, does it not? It keeps it from having to wait until 2021, if I understand it, if Brett decides to wait until then to launch. Well, the first thing I'd like to address is Day actually makes the argument that perhaps Day, I'm sorry, Brett could delay, but there's really no basis, first of all, on the record to make that argument. Well, let's... Except for my purpose of my question that the basis and the record for that is the agreement between Synovia and Brett, that this gives Brett at least an arguable incentive to do something other than what a normal rational actor would do in the absence of such an agreement, which is launch as soon as he could. So this gives Brett an alternative way to make money without launching its generic product. So assume that is a sufficient round to provide at least a rational likelihood that there will be a delay. Now, with that background, why isn't this declaratory judgment request for relief material to the injury that Day contends it's suffering? Well, the first thing I'd like to point out is that under this Court's case law, including Carrico and Jansen, that the focus of the jurisdictional injury is between now and when the first filer is able to launch. And again, unless there's a basis... Not quite. I mean, what our cases have said, that if the only injury at the start of the suit is the possible injury as a result of the delay, that that's not sufficient for jurisdiction. But there's a difference between starting jurisdiction in the first place and mootness. Under TEVA, this case would become moot if there was a launch and the 180-day period started to run. But as Judge Bryson points out, we don't know whether that's going to happen. It hasn't happened yet. So why can't this case, since there was declaratory judgment jurisdiction in the first place, continue until it becomes moot? Because there can't be jurisdiction in the first place without a concrete harm. And again here, this is unlike this court's decision in Carrico, where there was an actual delay. No matter what happened with respect to the other challenge involving the asserted Oranger patent, the 712 patent, no matter what happened with respect to that challenge, it was guaranteed that there would be an early entry date for the subsequent filing. But you seem to be arguing that because there are two suits pending, each one can be a ground for saying that the other one lacks jurisdiction. Well, to be clear, the first suit, there is jurisdiction by the assertion of patents. Now, suppose we had a situation in which the patents were divided between two declaratory judgment cases, right? And you'd be arguing, oh, well, in case one, you can't get any relief because case two would be a barrier. In case two, you'd be arguing the opposite. That doesn't seem right. Well, certainly that's not this case. There isn't two declaratory judgments. There's an actual litigation, and it's a litigation in which, as Snowden recently informed the court, data has been found to mostly infringe five patents, including two patents that were expired in 2013. But analytically, in thinking about the problem of whether there is a non-speculative injury, if you could take Judge Dyke's example, wouldn't you think that in that situation, the injury in each of the two cases would be non-speculative? In a case where it were purely just two separate declaratory judgment actions, which I would wonder why a subsequent file would do that in the first place, but if it did, certainly there would have to be jurisdiction in one of the cases. But in that case, it's interesting because in order for there to be this sort of declaratory judgment hypothetical, you'd be talking about a situation where there's a covenant not to sue granted. So in that scenario, it would have to be a covenant across the board, in which case there isn't really much to litigate, unlike this case where Snowden has asserted five patents, and the parties are actually litigating those patents. But why should we say that there's priority to the infringement suit, and that it has to be resolved before you can bring a declaratory judgment suit? Why shouldn't they both proceed at the same time? Because Article III requires that there be an actual concrete harm to be able to seek a declaratory judgment. But actual concrete harm is this declaratory judgment action is attacking a patent which has to be invalidated or found not infringing in order to trigger the 180-day exclusivity period. But again, that judgment would be meaningless. It's an abstract judgment unless you have the other patents also subject to a judgment, which in this case, again, are expired after the first filer is able to come into the market pursuant to a settlement agreement that was co-competitive, enabled at an earlier launch by one year. They've now been planning for about four years to come to this market. Suppose we reject that argument. What other grounds are there for finding a lack of declaratory judgment jurisdiction? Yes, Your Honor, a second ground for finding no jurisdiction in this appeal would be the practical inability of any judgment to have any real-world effect because, again, all of the judgments have to happen by no later than June 6th in order to trigger a potential forfeiture event. And that's less than three months from today. Currently at the district court, we have a judgment... Well, that might moot jurisdiction at some point in time, but would it really warrant affirming the denial, affirming or going back and reversing the denial of the motion to dismiss? Because we have to look at whether jurisdiction existed as of the date the complaint was filed. You have to look at, of course, the date the case was filed, but you also have to look at throughout all stages of review, including today on appeal. And this is similar to the way the court looked at this in the Merck v. Apotex case, which is non-presidential. And in that case, there hadn't been an actual first-fire launch. The court looked at the circumstances, and again, Benjamin says, look at all the circumstances. I submit this would be a circumstance. And said that we can't, from a practical perspective... Do you think later arising facts are a circumstance? I mean, for example, in D.J. jurisdiction, we've always rejected the idea that the patentee subsequently sexually sued the alleged infringer on the patent. We've never been willing to look at that as a basis for creating D.J. jurisdiction, but you think nonetheless we should look forward and see what happens in another suit and all these other things? I think particularly when you're talking about a real potential waste of resources, these are complex jurisdictional issues, and here we're talking about they would have to complete the proceedings of the district court, which they currently haven't even filed their post-trial motion, 23 days after the judges would enter. We would have to complete the remaining proceedings of the district court, and then before June 6th, complete an entire appeal, including arguments, briefing, decision, any petitions for a hearing. It's completely impractical, and frankly... Perhaps, but this case doesn't become moot until Brett goes on the market and triggers the 180-day period, right? Certainly, there is no mootness until that happens, but again, there's no basis in the record at all, not a single shred of evidence in the record to suggest that Brett will delay even one day when it's entitled to. In fact, in the record, there's a press release that Brett appreciates the certainty and is ready to launch, and this is a settlement agreement... But Brett has a choice, which is, of course, what raises the specter of its not launching, and it can distribute under the NDA, rather than distributing under the ANDA, as I understand its options, correct? Brett could distribute synovium, in effect, synovium branded drug, pursuant to the license of synovium. Brett does have options, and Brett's in the business of selling products to make money. One of the options for selling products is to work directly with the branded drugs, which it now has an option to do, correct? Regardless of when Brett comes into market, Brett's exclusivity will be triggered, however they come in. You're saying that even if they sell the branded product under the NDA, that the 180-day exclusivity period is triggered? My understanding of the statute is that if the first filer sells product, that that would be either... It doesn't have to be the generic product that was authorized by the ANDA. It can be reselling the NDA product. That was not my understanding, but my understanding is based on a fairly thin reading of the statute. My understanding is that when that generic comes into market, it would trigger the potential for preserving. I'm sorry, you didn't run it 180 days. You don't mean not when the generic comes into the market. You mean whenever, even if it's authorized under the NDA, and it comes on the market. You mean when that person who filed the ANDA and has the exclusivity comes on the market. My understanding is the FDA would look at it as this is the first filer is now entering the market, and we're now giving them the exclusivity, and that exclusivity begins to run. This may be an issue of sufficient significance, and I wonder if the parties would not mind providing us with a letter with authority both stating your position as to this question. You understand the question, obviously, that we're focusing on. Yes, Your Honor. Whether the distribution, not of the generic drug under the ANDA, but by the first, by the generic. First filer. The first filer, whether the distribution or something of drugs under the NDA would trigger. Right? Okay. We'll be back to you, Your Honor. All right. I see that I'm out of time. I'd like to reserve whatever I have left. Very good. We will save that. Thank you. Ms. Love, do you have a different answer to that question that we were just focusing on? And in any event, whether you have an answer right now or not, we would like an answer from you if you would. Perhaps both parties could give us that, and would 10 days be a reasonable request? Absolutely. Okay. Thank you very much. You have a view on it now. Do I have a view on it now? I think that once the first filer, I don't have a precise view on it, but I know that the first filer can sell its exclusivity to another ANDA. So that would lead me to believe that a first filer does not have to be Why don't we then, in 10 days, it can be in just letter form, very short. We don't need to inflect the exposition, just an answer in reference to materials that may be pertinent to the question. Thank you. Absolutely. Thank you. Are there incentives here for breadth to delay entry? Are there incentives for breadth to delay entry? There could be. The delay of entry is the whole reason that the M&A was enacted, because generic companies were making deals with brand companies to settle their litigation, and then they wouldn't go to market. Isn't that why you're here? I mean, I had thought, perhaps I'm mistaken, but I thought your concern, your real concern, was not that we want to cut down the time by a few days. Your concern is that if breadth doesn't go to market, you may be out of luck until 2021. Isn't that your concern? So if breadth, at any point between now and 2021, assuming this case goes away, if breadth ever markets, then it starts the time running, and you're good. That's correct. The earlier the better, as far as your concern. That's correct. So I would have thought that would be the central focus of your pragmatic concerns about this case, and isn't that really why you're here? Well, my concern is that they won't go to market right away. That's what I'm saying. Yes, and that we will be kept out until... And there's no forfeiture. The forfeiture provision doesn't apply here. That's correct. The forfeiture provision would apply if... Unless there's an invalidity or not infringement determination, but not until then. That's right. They can delay up until 2021. Absolutely. And a covenant not to sue is not the effective equivalent of a judgment of non-infringement. That's right, Your Honor. If Mr. Dittman were to offer you to substitute a judgment, a consent judgment of non-infringement today, you'd be thrilled. Absolutely. For the covenant not to sue. Because then we couldn't be kept out of the market by the 289 patent, which we do not infringe. Right. So help me to understand what the incentives would be to delay marketing after the date when they're entitled to do it under the settlement agreement. Well, the incentives could be some sort of a deal between Synovion and Breast. I don't know what other deals there were. I do know that there was some sort of a getting together on another drug was part of this. So I really don't know. There could be all sorts of reasons. What I would like to point out, though... There hasn't been any discovery on this question. There's been no discovery in this case at all, Your Honor, because it was a judgment on the date. All right. What's important is that the whole reason that the 2003 amendments were put into the Hatch-Waxman Act was because there were these settlements... So there could be some sort of side agreement that we don't even know about, which would give them incentives to delay going under the market. That's right. We don't know. Such as a cash payment. Could be. And we wouldn't know about that. The point is that if you grant... The point is actually that we have jurisdiction now under the Careco case. We had jurisdiction when we brought this in 2008. We had jurisdiction when Judge Stark signed the final order of non-infringement in 2011. And we have jurisdiction now because we've faced that harm all through those times. And that would be the only basis to dismiss us would be to say that we didn't have jurisdiction at one of those times. Not that we might not have it in the future. Well, the basis for dismissing is if it becomes moot when they go to market. Right. And your opponent agrees that it's not moot until that happens. That's correct. It's not moot until that happens, so we have jurisdiction until that happens. Do all of the other patents expire before the 289? Yes. Three of the patents have already expired. And the last patent expired in August 2013. So even if the... I realize we received supplemental authority about the ongoing case involving the other patents. And if I understand that authority right, it was that the district court held valid and infringed. Is that right? That was a jury verdict, Your Honor, and that is not a final judgment. No, no, I get it. But I'm saying even if it is a final judgment, even if it comes through on appeal and we affirm it, your argument is we still need to get in on the 289 because it prolonged the entry time all the way until it expires. That's right. If you... That's your argument, right? If you revert to the district court and Brett Sessions owes to market and the 994 patent expires in August 2013, we would have to bring another judgment on the 289... another action on the 289 patent to get a judgment on that so that we could trigger Brett's exclusivity. Now, this isn't a case where we're trying to get in before Brett certainly as was in the Jansen case or the Merck case. Are you sure? Not even... When you started this litigation, if litigation had moved incredibly expeditiously, you could have feasibly gotten in before Brett, right? Because you could have invalidated the patent more than 180 days in advance of August 2012. Isn't that right? Well... If you had invalidated the patent very quickly, couldn't you have caused their 180 days to start when they weren't even able to enter because of the settlement agreement? Well, I would disagree that they wouldn't be able to enter because of the settlement agreement. Because the settlement agreement is... And if somebody else goes to market, they can't. They can go to market. Oh, okay. But there would have been a safety issue. If somebody else goes to market, they can, but wouldn't that have eliminated their 180 days? I don't know what the agreement... Yeah, that would depend on the agreement. Yeah, exactly. Okay. I don't know what their agreement was. I'm sorry. Let me move to... Well, it's already a point, but there's language in both Jansen and Karaka that I want you to comment on. And it's summarized in the last couple of pages of Jansen in which, citing footnote 14 of Karaka, the Court says that possible delay of the first paragraph before end-of-filer launching after the expiration of a patent is too speculative to create a justiciable Article III case of controversy. You're familiar with that. Yes, I am. Can you comment on that and why that isn't a sufficient ground to deny relief to you in this case? It's not sufficient for several reasons. The first reason is that, again, we still have jurisdiction. You say on the theory that this whole thing could get wrapped up in the next few weeks and so forth, but... No, not on the theory that it could get wrapped up in the first 10 weeks. But there was jurisdiction initially, but it was first thought. Correct. And it could have more reasonably been wrapped up within a short period of time. Yes, if we hadn't gone through four judges in the district court. Right. To answer your question, I think that what the Court is referring to there is that there is an inherent framework in the Hatch-Waxman Act. And in the Carrico case, once the 942 expires, the regular Hatch-Waxman Act comes into being and there becomes the 180-day exclusivity that the other company could get. In this case, the settlement agreement is not part of the Hatch-Waxman framework. The questions about whether breath will go into market or whether breath won't go to market are not part of that framework. And so this is different than waiting until the 512 expires. You mean because under Hatch-Waxman, if this had been Hatch-Waxman triggering, they can go into market, then after 75 days, if they don't, you get to anyway, or you get to start. Is that right? No, that wouldn't happen in that case. If it wasn't under settlement, but rather this was because that was the time period where they expire, that was the time period where... The problem with that case is that case was under the old law, and so there was no forfeiture, so you would still have to get a judgment on all of the patents. Here, there's the forfeiture provision. But it doesn't apply to a settlement. It does not apply to a settlement. No, you have to have a judgment, final judgment. And is that why you think there's a difference between this situation and Janssen's comments, holdings, statements, whatever they are, that delay or anticipated or potential delay by the Antifa filer is too speculative to be a real harm? Is that why you think it's different? I think it's different for that reason. I also think it's different because Janssen entered into an agreement to agree that the patents were valid and infringed. They have not put itself in the same place as Janssen did in that case. They haven't agreed to anything. Well, in order for the first of those two points to matter, it seems to me, what you need to be saying is that unlike Carrico and Janssen, in which the delay, possible delay in launching after first opportunity for the Antifa filer was speculative, that that agreement makes it not speculative or at least less speculative. So that's what I understood your first response to Judge Moore to be suggesting, correct? I'm sorry, Your Honor, which agreement? The settlement agreement. The settlement agreement. Right. Makes it more speculative. More speculative. I thought it would... Well, maybe I'm using the term speculative backwards. It makes it... Does it make it more likely that breadth will not go to market at the first opportunity? Yes, because we don't know what else is going on there. Well, but we never know everything that's going on. True. But I'm really... My follow-up question is, what is it about this agreement that tells us, ah, now that we see that agreement, the agreement that we have before us in the record in this case, that we can say, aha, that's why we can say that the likelihood that breadth will not launch as soon as it can is high enough that that's a real injury as distinguished from Carrico and Janssen? That really goes, I suppose, to the question we've asked you all to... To look at. Look at. But is there another reason why that's so? Again, the only thing that I can point to is the fact that the whole reason that there is this DJ action, that Congress allowed a DJ action and that Congress allowed forfeiture is because that's what was happening. And so that was the pattern. Could I try here? It seems to me what Carrico and Janssen are saying is if you want to get declaratory judgment of jurisdiction and you're during the launch period, the fact that the launch may be delayed defeats declaratory judgment. It does not create declaratory judgment jurisdiction in the first place. Here, that wasn't true. When this case was commenced, you were not saying that the injury is delaying the launch. You were saying we can get this case concluded and the other case concluded in time to do something before the launch date. So once there's declaratory judgment jurisdiction in the first place, which there was here, and I think everybody agrees that there was, the fact that the launch may occur or may not occur is relevant to mootness but not to the existence of declaratory judgment jurisdiction in the first place. Yes, I would agree with that. So I guess I'll conclude with my introduction. This case presents the issues that the 2003 M&A amendments were enacted to address. As I said in response to some of your questions, the civil actions to obtain time and certainty and the four future provisions of the 2003 amendments to the Hatch-Waxman Act were enacted to prevent precisely what's happening here. The Hatch-Waxman scheme relies upon the early resolution of patent disputes and settlements may resolve those disputes but they don't necessarily get the product to the market. If Zenobian really was not going to sue us and wanted to not waste the time of the court with a declaratory judgment action, Judge Bryson is right. They could have just issued us a judgment. We could have had a stipulated judgment of the court. They could have stipulated to a judgment and the judge could have signed off on it and that would have eliminated all of this. They chose not to do that. They chose to give us a covenant not to sue when this court had already decided in Carrico that covenants not to sue were ineffective in a Hatch-Waxman case. Thank you, Ms. Nuff. We will hear a rebuttal from Mr. Dittmer. Thank you, Your Honor. I'd first like to address the settlement agreement. There are some questions about whether there was any basis to believe that there might be a reason for a delay. The only thing the settlement agreement talks about is potentially accelerating the launch date. It doesn't say anything about delaying or is there any reason or incentive in the settlement agreement to provide such an incentive. And I would also like to note that there could be... The time of date was filed in 2012. Correct. Do you agree there was jurisdiction at the time it was filed? For the reasons that I discussed earlier with respect to later asserted Orangewood patents being asserted, I would submit that there was no jurisdiction from the outset. What is that basis again? Explain it one more time. The fact that there are Orangewood patents that were asserted by Sonomian in litigation that expire after the first file of breath could come to market and thus the launch date that we have to use as a framework under the cases discussed earlier, Carrico and Jansen, that that's really the launch date you have to assume unless there's a basis in the record to believe otherwise. They have not pointed to anything in the record to suggest there's any reason or any possibility of a delay. I mean, here we have a situation where breath entered into settlement agreement in 2008. They've been preparing since then to launch on August 12th of this year. I'd also like to... That's the two cases at once argument. I'm sorry? That's the two cases at once argument. Yes. Yes, but again, it's very important what's involved in those two cases. But apart from that argument, there was declaratory judgment jurisdiction at the outset, right? If you reject that argument, that would be the basis for us to say there was none, but even if you look at  But the answer is that putting that argument aside, there was declaratory judgment jurisdiction in the first place. We don't agree that was our argument against the two cases at once. That is the only argument that I get at that time in 2008. If we look at the facts that exist today, I think Jansen is very instructive on multiple fronts here. In that case, of course, there were some different facts in that there was an actual stipulation where the subsequent filer could not come to market until at least the same day  because of their agreeing to be abound by a finding of infringement. There, in a separate section of the court's opinion, they address the argument where the subsequent filer said, very similar to today, what we're hearing from Dave, well, we have no guarantee they're going to launch. Maybe they'll delay. Maybe there'll be a harm. Jansen squarely held that that is not sufficient to create jurisdiction, at least without any basis in the record to conclude that's a possibility. Here, not only do we not have a basis, we don't even have a finding, any findings from the district court on this issue. We're left here with nothing in the record, a settlement agreement that talks only about acceleration. And at that point, I did want to address that even though the agreement says that Breck can launch if another company has already launched, in that instance, 180 days is already gone. So, that can't be anything that's of relevance to jurisdiction in this case because it already assumes the 180 days is gone, which is the whole point of why we're here in the first place. And I think one last point I'd like to make is that Jansen also emphasizes the importance of the 180-day exclusivity. And, here, what we'd be talking about is if everything went all together for days, which we know really can't because in three months they can get all these judgments that they need to trigger a potential forfeiture event, we'd be talking about merely eviscerating the 180 days of the first filer just to let them in what, a couple days or a week early. And, in that circumstance, it's moving to the bit that the incentives of the Hatch-Waxman Act have been derailed in that circumstance. Are we good? Thank you very much. Thank you, Mr. Chairman. And, as often said, I'm looking for a certification to submit it.